IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RODNEY BLACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-CV-1118-DWD |
| | ) |
| ALISA DEARMOND, and | ) |
| ANGELA CRAIN, | ) |
| | ) |
| Defendants. | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Defendants Alisa Dearmond and Angela Crain have filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docs. 64, 65, 80, 81). Additionally, Plaintiff Rodney Black has filed a motion for partial summary judgment. (Doc. 56). For the reasons set forth below, the Court **GRANTS** Defendants' motions for summary judgment and **DENIES** Plaintiff's Motion for Summary Judgment.[1]

## I.   BACKGROUND

Plaintiff, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center ("Menard"), brings claims pursuant to 42

---

[1] Defendant Dearmond filed a reply (Doc. 87) alleging that Plaintiff's response was untimely. Plaintiff, however, was granted an extension, allowing him until May 22, 2024 to file a response. (Doc. 73). Accordingly, Plaintiff's response, which is dated May 11, 2024, is timely. Plaintiff has also filed a motion to clarify, noting that his response was timely and alleging that Defendant's Crain's motion for summary judgment was untimely. Plaintiff is advised that Defendant Crain received an extension, allowing her until May 9, 2024 to file her motion for summary judgment. (Doc. 71). Defendant's Crain's motion was filed on May 9, 2024 and is timely. The Court therefore, denies Plaintiff's motion to clarify as MOOT. Finally, the Court GRANTS Defendant Crain's motion for leave to substitute exhibit C (Doc. 85).

U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, he alleges that he was deprived of his CPAP machine from approximately September 20, 2020, thru May of 2021, and that his grievances, letters, and sick call slips about the same issue were mishandled. After conducting a preliminary review, the Court found that Plaintiff stated the following claims:

> Claim 1: Eighth Amendment deliberate indifference claim against Defendant Dearmond regarding Plaintiff's CPAP machine;
>
> Claim 2: Eighth Amendment deliberate indifference claim against Defendant Crain regarding the handling of Plaintiff's grievances about his need for his CPAP machine.

(Doc. 8 at 4).

## II.     APPLICABLE LAW

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.' " *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to

produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Liberty Lobby*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Liberty Lobby*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Liberty Lobby,* 477 U.S. at 252.

The court reviews the parties' cross-motions for summary judgment "construing all facts, and drawing all reasonable inferences from those facts, in favor of … the non-moving party." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)). However, the court "may not grant summary judgment for either side unless the admissible evidence as a whole -- from both motions -- establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

### III. Compliance with Rule 56 and Local Rule 56.1

Before addressing the relevant facts, the Court reviews Plaintiff's compliance with Federal Rule of Civil Procedure 56 and Local Rule 56.1[2]

#### A. Federal Rule of Civil Procedure 56

As is relevant here, pursuant to Rule 56, the party opposing a motion for summary judgment must properly address the moving party's assertions of fact. FED. R. CIV. P. 56(e). To properly dispute an assertion of fact, the non-moving party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of his position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. FED. R. CIV. P. 56(c)(1). An affidavit or declaration must be (1) made on personal knowledge; (2) set out facts that would be admissible in evidence; and (3) show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). When "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e).

#### B. Southern District of Illinois Local Rule 56.1

Local Rule 56.1(a) provides that briefs in support of a motion for summary judgment "must contain a Statement of Material Facts which sets forth each relevant,

---

[2] The Southern District of Illinois recently revised its local rules, effective October 30, 2023. This included the addition of Local Rule 56.1 which imposes requirements on litigants in addition to the requirements set forth in Federal Rule of Civil Procedure 56.

4

material fact in a separately numbered paragraph." SDIL-LR 56.1(a); FED. R. CIV. P. 56(c)(1). The opposing party then files a Brief in Opposition, which "must contain a Response to the Statement of Material Facts." SDIL-LR 56.1(b). The Local Rule further provides as follows:

> The response shall contain corresponding paragraphs to the Statement of Material Facts that state whether the fact is: (1) admitted; (2) disputed; (3) admitted in part and disputed in part (specifying which part is admitted and which part is disputed); or (4) not supported by the record citation. The disputed facts, or parts of facts, shall contain specific citation(s) to the record, including page number(s), upon which the opposing party relies, where available.

SDIL-LR 56.1(b). Any material fact set forth in a Statement of Material Facts that is not specifically disputed by the opposing party will be deemed admitted to the extent the fact is supported by evidence in the record. SDIL-LR 56.1(g); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010). Additionally, the "Court will disregard any asserted fact that is not supported with a citation to the record, unless the factual basis for the assertion is clearly identifiable from the parties' related citations or permissible inference." SDIL-LR 56.1(f).

The obligation imposed on an opposing party in Local Rule 56.1, "is not a mere formality." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (interpreting the Northern District of Illinois' substantially similar Local Rule 56.1) (internal quotation and citation omitted). "Rather, it follows from the obligation imposed by FED. R. CIV. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial." *Id.* The Rule is intended "to aid the district court, which does not

5

have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." (internal quotation and citation omitted).

In this case, because plaintiff is a *pro se* litigant, each Defendant served him with a Rule 56 Notice (Docs. 82 and 66) as required by Seventh Circuit precedent. *See Timms v. Frank,* 953 F.2d 281 (7th Cir. 1992); *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982). The notice explains the meaning of a motion for summary judgment, the requirements set forth in Rule 56 for responding to a summary judgment motion, and the consequences of failing to properly respond to a summary judgment motion, including the consequences of failing to properly support or address asserted facts. The Court notes that, although Defendants' Rule 56 notice accurately describes Plaintiff's obligations with respect to Federal Rule of Civil Procedure 56, it does not discuss the requirements that are unique to Local Rule 56.1, such as the necessity of including a Statement of Material Facts that complies with the directives in Local Rule 56.1(b) and the necessity of responding to a Statement of Material Facts in a manner that complies with Local Rule 56.1(b).

A plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States,* 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Collins v. Illinois,* 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"); SDIL-LR 56.1(j) (Local Rule 56.1 "applies equally to represented and *pro se*

parties."). Nevertheless, where appropriate, the Court has discretion to, and at times should, afford *pro se* litigants leniency to ensure that cases are resolved on the merits. *See* e.g., *Otis v. Demarasse*, 886 F.3d 639, 644-645 (7th Cir. 2018).

## C. Plaintiff's Response to Defendants' Rule 56.1 Statement

Plaintiff's Motion for Partial Summary Judgment (Doc. 56) and his Response to Defendants' motions for summary judgment (Doc. 84) do not fully comply with Local Rule 56.1. The Court, however, will allow Plaintiff some leniency on his lack of compliance. The Court finds that leniency is appropriate for two reasons. First, Local Rule 56.1 was recently amended to include new specifications for summary judgment briefs filed in the Southern District of Illinois. Second, while Defendants' Rule 56 Notice correctly describes Plaintiff's Rule 56 obligations, and the consequences of failing to comply with those obligations, it does not reference any of the requirements unique to Local Rule 56.1. Instead, to the extent that this Court's local rules are mentioned, Defendants appear to be referencing an outdated version of the Court's Local Rules – a version that did not include the requirements now found in Local Rule 56.1(b).

Given that the consequences of failing to comply with Local Rule 56.1 are so dire, and considering the Seventh Circuit's mandate in *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982), the Court finds that leniency is appropriate here where Defendants' Rule 56 notice did not sufficiently address the importance of complying with Local Rule 56.1's requirements. Thus, the Court will not penalize Plaintiff for failing to comply with the specifications set forth in Local Rule 56.1. The Court, however, will not excuse

7

noncompliance with Federal Rule of Civil 56, such as failing to properly support or address a fact as required by Rule 56(c).

## IV. FACTUAL RECORD[3]

### A. Preliminary Matters

Dearmond urges the Court to disregard certain facts alleged by Plaintiff. For instance, Dearmond contends she only examined Plaintiff on three occasions and that, during those visits, they never discussed Plaintiff's complaints about the removal of his CPAP machine. Plaintiff disputes this, alleging he had one or more conversations with Dearmond asking for his CPAP machine to be returned. Dearmond contends the Court should disregard Plaintiff's allegations regarding conversations with her because the medical records support her version of events. (Doc. 87, pg. 5) ("Plaintiff cannot create a dispute of material fact simply by spewing unsupported *ipse disit* flatly refuted by the hard evidence proffered.") (citing to *Khan v. Midwestern Univ.*, 879 F.3d 838, 846 (7th Cir. 2018)). Dearmond's argument is problematic because Plaintiff's declarations regarding whether and when he spoke to Dearmond, as well as what he told Dearmond, are not unsupported conclusions. The alleged facts, which are included in Plaintiff's declarations, are within his personal knowledge and are otherwise competent evidence under Federal Rule 56(e).

---

[3] In preparing the factual account that follows, the Court has relied on the parties' statements of fact and responses thereto.

Defendant also raises arguments regarding inconsistencies in Plaintiff's allegations. Plaintiff's pleadings allege that he had a conversation with Dearmond in December 2020. The exact date, however, varies. He also contends that he spoke with Dearmond regarding his CPAP machine during other sick call visits. In his deposition testimony, Plaintiff estimated that he spoke with Dearmond approximately three times regarding his CPAP machine, but he could not recall the exact date. Dearmond contends the Court should disregard Plaintiff's claim about speaking with her at some point in December 2020 because his pleadings and testimony are inconsistent as to whether there was a single conversation or multiple conversations and as to the date on which the conversation or conversations occurred. The Court has reviewed the alleged discrepancies and finds that, while they create an issue of credibility, they are not inherently contradictory and do not warrant imposition of the sham affidavit rule. *See Kopplin v. Wisconsin Cent. Ltd.*, 914 F.3d 1099, 1103 (7th Cir. 2019) ("[A] party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony.") (internal quotation and citation removed); *Bank of Ill. V. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169–70 (7th Cir. 1996) ) ("A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence."). As such, the Court will not disregard these alleged facts.

Finally, Dearmond asks the Court to disregard the nine sick call slips submitted by Plaintiff because: (1) there is no evidence Plaintiff submitted them because they are not in his medical file and do not include a response; (2) Plaintiff has a history of

9

submitting questionable sick call slips that do not include a response in other civil rights cases; and (3) they are self-serving. The first two arguments create questions of credibility, not admissibility, and do not provide a basis for disregarding the sick call slips. As to the third argument, the Seventh Circuit has "repeatedly emphasized over the past decade, the term "selfserving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

### B. The Parties

During the relevant time period, Plaintiff was an inmate incarcerated within the Illinois Department of Corrections at Menard; Defendant Crain was the Healthcare Unit Administrator ("HCUA") at Menard; and Defendant Dearmond was a nurse practitioner and employee of Wexford Health sources, Inc. working at Menard. (Doc. 81-1, pg. 1). Although Crain is a registered nurse, in her position as an HCUA, she did not treat patients. However, if requested, Crain would review an inmate's medical file and provide a summary of the treatment he was or was not   eceivingg, to assist officials in responding to grievances. (Doc. 85-1).

Plaintiff has COPD and sleep apnea and uses a CPAP machine. (Doc. 69, pg. 2). On September 20, 2020, in the initial stages of the COVID-19 Pandemic, Dr. Siddiqui, suspended Plaintiff's use of a CPAP machine, and Plaintiff's CPAP machine was removed from his cell. (Doc. 84, pg. 4; Doc. 65-1; Doc. 69, pgs. 1-2; Doc. 81, pg. 1; Doc. 81-2). The CPAP machine was taken in accord with the Office of Health Services and CDC Guidelines recommending that use of CPAP machines be discontinued as a COVID-19

10

precaution. (Doc. 65-1; Doc. 81, pg. 1; Doc. 81-2). At the time, Plaintiff was "double celled," and Dr. Siddiqui concluded that because Plaintiff had no recent respiratory decompensation or hospitalization, his use of a CPAP machine could be suspended. (Doc. 81, pg. 2; Doc. 81-2; Doc. 81-3).

### C. Medical Appointments Following Removal of CPAP Machine

Dearmond contends that, after Plaintiff's CPAP was removed she saw him on three occasions: (1) December 7, 2020 for a medical furlough for an onsite FibroScan ultrasound; (2) December 22, 2020 for reports of ingrown toenails and a periodic diabetic and hypertension/cardiac chronic clinic; and (3) March 17, 2021 to discuss a permit for a CPAP machine. Dearmond further contends that, during these visits, Plaintiff did not express any concerns regarding the removal of his CPAP machine. As to the March 17, 2021 visit, Dearmond contends that, although the visit was scheduled for the purpose of discussing Plaintiff's CPAP machine, upon arrival, Plaintiff indicated he only wanted to discuss back pain and issues regarding the CPAP machine were not discussed.

Plaintiff claims that, in December 2020,[4] He engaged in a lengthy conversation with Dearmond and indicated that he wanted to have his CPAP machine returned. According to Plaintiff, Dearmond eventually informed him that the CPAP machine could be returned if he agreed to be transferred to a room with a solid door. Plaintiff also disputes the claim that he did not discuss the return of his CPAP machine during his visits with Dearmond on December 22, 2020 and March 17, 2021. (Doc. 84, pg. 16).

---

[4] Depending on the pleading, the encounter with Dearmond is alleged to have occurred on December 12 (Doc. 56), December 17 (Doc. 84), or December 18 (Doc. 1). The medical records do not reflect that Dearmond saw Plaintiff on December 12, December 17, or December 18.

Plaintiff also contends that he submitted approximately twenty nurse sick call slips indicating that he was requesting officials return his CPAP machine. (Doc. 84, pgs. 9, 16). In support of this claim, Plaintiff includes nine alleged nurse-sick call slips. (Doc. 84, pgs. 27-36). The sick call slips indicate that Plaintiff repeatedly indicated he was experiencing difficulty without his CPAP machine, including difficulty breathing, and that he wanted the CPAP machine returned. Plaintiff, however, does not allege or present any evidence showing that Dearmond reviewed or was aware of the proffered sick call slips.

The medical file reflects that, between September 20, 2020 and May 27, 2021, Plaintiff was seen in the health care unit at least 20 times by multiple providers. (Doc. 65-2, pgs. 102-04, 107, 155-157, 464, 467-470, 474-480, 482, 487, 489-490, 500-501, 567-576). The medical file indicates that Plaintiff was seen by a provider that was not Dearmond on October 23, 2020 and October 30, 2020, and these are the only two visits that indicate Plaintiff raised questions about the removal of his CPAP machine. Finally, the medical record is consistent with Dearmond's version of events, indicating that she only met with Plaintiff on December 7, 2020, December 22, 2020, and March 17, 2021. There is no indication that Plaintiff raised any issues regarding his CPAP machine during these three medical appointments.

### D.   Relevant Grievances and Responses

On October 20, 2020, Plaintiff submitted a grievance indicating that his CPAP had been removed and that he wanted to be seen by medical providers. (Doc. 84 pgs. 17-18). On March 4, 2021, Crain and Dr. Siddiqui responded to Plaintiff's grievance. (Doc. 84, pg.

19). The response informed Plaintiff that all CPAP machines were removed from cells as a COVID-19 precaution and directed Plaintiff to utilize nurse sick call if he experienced any additional issues. (*Id.*).

On January 6, 2021, Plaintiff submitted another grievance indicating that: (1) Plaintiff saw Dearmond on or about December 18, 2020; (2) Plaintiff spoke to her about his CPAP machine; and (3) Dearmond told Plaintiff that "Springfield insisted that before [he] could get [his] CPAP machine back that [he] must be tested for COVID-19 once a week and be behind a concealed door (no bars) I told her give me back my CPAP machine or/and sent me to a pulmonologist." (Doc. 84, pg. 22).

On March 4, 2021, Dr. Siddiqui and Crain responded to Plaintiff's January 6, 2021 grievance indicating as follows: (1) Plaintiff saw Dearmond on December 22, 2020 for an ingrown toenail and did not express concerns about his CPAP machine; (2) per medical records dated February 1, 2021, Plaintiff's COPD was stable; and (3) Plaintiff had not submitted a written request to be evaluated for a medical permit to be behind a solid door for the use of his CPAP machine. (Doc. 84, pg. 23). The response further indicated that Plaintiff would be scheduled to be evaluated for a medical permit for housing behind a solid door for use of his CPAP machine and directed Plaintiff to utilize nurse sick call if there were any further issues. (*Id.*).

Plaintiff does not allege that Crain was aware of the nine sick call requests attached to his responsive pleading, and he does not present any evidence in that regard.

Plaintiff's CPAP machine was returned on May 27, 2021. (Doc. 69, pg. 4).

## V. DISCUSSION[5]

To show that prison officials acted with deliberate indifference, a plaintiff must put forth evidence that prison officials knew that the prisoner's medical condition posed a serious health risk, but they consciously disregarded that risk. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Id.*; accord *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence does not violate the Constitution.").

The Seventh Circuit has held that deliberate indifference occurs when the defendant:

- renders a treatment decision that departs so substantially " 'from accepted professional judgment, practice, or standards as to demonstrate that' " it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

Plaintiff does not have a constitutional right to demand specific medications or treatment. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("[A]n inmate is not entitled

---

[5] The Court presumes without deciding that Plaintiff suffered from a serious medical need.

14

to demand specific care and is not entitled to the best care possible ...." Rather, inmates are entitled to "reasonable measures to meet a substantial risk of harm.").

### A. Nurse Practitioner Dearmond

In the instant case, the parties dispute whether Dearmond was aware of Plaintiff's concerns regarding the removal of his CPAP machine or that Plaintiff was experiencing difficulty without access to his CPAP machine. This factual dispute, however, does not bar granting Dearmond's Motion for Summary Judgment. Even accepting Plaintiff's version of events, Plaintiff cannot survive summary judgment.

Plaintiff contends he spoke to Dearmond in December 2020, and possibly during other nurse sick call appointments, regarding having his CPAP returned. Plaintiff further alleges that he submitted multiple sick call requests indicating that he was having difficulty breathing and required treatment for his sleep apnea. Nothing in the record, however, indicates that Dearmond was aware of these letters. At most, Dearmond knew Plaintiff's CPAP machine had been removed as a COVID 19 precaution and knew that Plaintiff was asking for it to be returned.

According to Plaintiff, Dearmond indicated Plaintiff's CPAP machine could be returned if he submitted to weekly COVID 19 testing and was transferred to a wing with solid doors. Plaintiff states that he agreed to do so. But nothing in the record indicates that Dearmond, as a nurse practitioner, had any involvement in housing assignments. Nor is there any indication that Dearmond was responsible for the delay in returning the CPAP machine. Instead, the record evidence shows that the CPAP machine had not been returned because Plaintiff had not submitted a request to be evaluated for a medical

15

permit to be housed in a cell with a solid door. On this record, no reasonable jury would conclude that Dearmond acted with deliberate indifference to a severe medical need.

Additionally, there is no evidence that Plaintiff suffered substantial harm from any alleged delay in receiving his CPAP machine. Where prison officials delayed, rather than denied, medical treatment, the plaintiff must also present "verifying medical evidence" that the delay caused harm. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019); *accord Williams v. Liefer*, 491 F.3d 710, 714-715 (7th Cir. 2007) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm."). In other words, "a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Id.* Expert testimony is not necessarily required to establish causation, but medical records, treatment notes, or physician notes that confirm or corroborate a claim that the delay was detrimental may be sufficient. *Liefer*, 491 F.3d at 715.

Plaintiff has not presented medically verifiable evidence that he was harmed by not receiving his CPAP machine until May 2021. Nor do the medical records support such a finding. Plaintiff was examined repeatedly by medical staff during the relevant time period, and these records are devoid of any evidence that a delay in returning Plaintiff's

CPAP machine caused him harm.[6] Moreover, after the CPAP machine was returned, Plaintiff was seen on August 27, 2021. (Doc. 65-2, pgs. 41-42). During this visit, Plaintiff indicated that, although he finds the CPAP helpful, he only uses it three or four times a week because he sleeps with his mouth open. (*Id.*).

In his Complaint, Plaintiff alleges that, without his CPAP machine, he would wake up gagging and coughing, as well as other medical issues. (Doc. 1, pg. 8). Plaintiff also testified to similar issues. (Doc. 81-4, pgs. 24-26). Plaintiff's allegations, however, do not amount to verifiable medical evidence connecting the delay to any long-term consequences or injury.

### B. Healthcare Unit Administrator Crain

Plaintiff's claim also fails as to Crain. First, as with Plaintiff's claim against Dearmond, the claim against Crain does not survive because there is no verifiable medical evidence showing that Plaintiff was harmed by not receiving his CPAP machine until May 2021. Additionally, the claim fails because Crain was not personally involved in the alleged constitutional deprivation. Crain's involvement was limited to reviewing Plaintiff's grievances, and officials who simply process, review, or reject grievances are not responsible for the underlying conduct. See *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir.

---

[6] (Doc. 81-2) (dated September 21, 2020, it is noted that Plaintiff had no recent respiratory decompensation or hospitalizations); (Doc. 65-2, pg. 2) (dated October 23, 2020, it is noted that Plaintiff is not using an inhaler, Plaintiff denies any wheezing, shortness of breath, cough, and chest pain, Plaintiff indicates that his breathing is worse with activity, Plaintiff referenced CPAP machine); (Doc. 65-2, pg. 4) (dated October 30, 2020, Plaintiff reported shortness of breath, examiner observed no shortness of breath and provided an inhaler, Plaintiff mentioned CPAP machine); (doc. 65-2, pgs. 5-40) (Plaintiff is seen on multiple occasions between December 2020 and May 2021, the medical records reflect no complaints about breathing issues or loss of CPAP machine and no complaints about waking up gagging, coughing, or experiencing other medical issues at night without his CPAP machine).

2017); *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007). Nor is there any evidence that Crain turned a "blind eye" to Plaintiff's plight. *See e.g., Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). In reviewing Plaintiff's grievances, Crain noted that his CPAP machine was removed pursuant to policy and at the direction of Dr. Siddiqui and that his medical records did not indicate any sort of necessity as to the CPAP machine. Crain also provided Plaintiff with directions regarding how to submit a request to be approved for a permit for use of a CPAP machine and scheduled Plaintiff on call line to be evaluated for such a permit. On this record, there is no basis for finding that Crain was deliberately indifferent.

## VI. CONCLUSION

For the reasons set forth herein, the Court **GRANTS** Defendant Alisa Dearmond and Angela Crain's motions for summary judgment (Docs. 64, 65, 80, 81) and **DENIES** Plaintiff Rodney Black's motion for partial summary judgment. (Doc. 56). The Court **DIRECTS** the Clerk to close the case and to enter judgment accordingly.

**SO ORDERED.**

Dated: February 3, 2025

s/*David W. Dugan*
DAVID W. DUGAN
United States District Judge